# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WISCONSIN

In re:

SupplementWarehouse.com Inc.,   Chapter 11

Debtor.   Case No. 15-20569

**MOTION FOR AN ORDER (I) AUTHORIZING USE OF
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II)
APPROVING THE FORM AND METHOD OF NOTICE OF, AND SCHEDULING,
THE FINAL HEARING ON THE USE OF CASH COLLATERAL**

Debtor SupplementWarehouse.com Inc. ("SWI", or the "Debtor"), hereby moves (the "Motion") for the following:

(a) That the Court conduct a preliminary hearing to consider the Motion (the "Interim Hearing") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

(b) That after the Interim Hearing, the Court enter an interim order, in a form substantially the same as that attached to this Motion (the "Interim Cash Collateral Order")[1], authorizing the Debtor, pursuant to section 363 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rule 4001(b) of the Bankruptcy Rules, *inter alia*, to use the Cash Collateral (as defined hereafter) of the Lender (as defined hereafter) to

---

[1] The Debtor's proposed Interim Cash Collateral Order has been filed contemporaneously herewith. The Final Order (as defined hereafter) will be filed separately. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Interim Cash Collateral Order.

Forrest B. Lammiman flammiman@mpslaw.com
David L. Kane dkane@mpslaw.com
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, IL 60606
Telephone: (312) 987-9900
Facsimile: (312) 987-9854

{33968: 004: 01538364.DOC :2 }

fund the expenses set forth in the Operating Budget upon the terms and conditions set forth in the Interim Cash Collateral Order and to grant adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to the Lender pending a final hearing on this Motion; and

(c) That the Court schedule a final hearing (the "Final Hearing") to consider entry of a final Cash Collateral order (the "Final Order") authorizing on a final basis, *inter alia*, the use of the Lender's Cash Collateral and the grant of adequate protection, and approve the form and manner of notice thereof.

## CASH COLLATERAL SUMMARY

1. By this Motion, the Debtor seeks the entry of the Interim Cash Collateral Order authorizing it to use certain cash collateral of Lender (as defined hereafter), which generally consists of income generated from the Debtor's business. It is critical for the Debtor to use such cash collateral to sustain sufficient working capital to finance its ongoing postpetition business operations until it confirms a plan of reorganization.

2. The Debtor proposes to use cash collateral on an interim basis for a period of approximately four (4) weeks pursuant to the Operating Budget attached as **Exhibits A** hereto and to the Interim Cash Collateral Order (the "Operating Budget"). The Debtor requests that the Court schedule the Final Hearing no earlier than 21 (twenty-one) days following the date the Court enters the Interim Cash Collateral Order. The proposed adequate protection the Debtor expects to provide to Lender is the continued operation and maintenance of the Debtor's business which will preserve the value of Lender's collateral, as well as the granting of replacement liens. Other than replaced liens under Local Rule 4001(b)(10), the Debtor has not included any of the provisions identified in Local Rule 4001(b)(1) through (9) in the Interim Cash Collateral Order.

3. The Debtor proposes that its right to use cash collateral shall expire on the earliest to occur of any of the Termination Events set forth in Paragraph 25. On and after the occurrence of a Termination Event, the Debtor will immediately cease using any of the cash collateral; provided, however, that the Debtor reserves the right to seek Court authorization to continue to use such cash collateral despite the occurrence of a Termination Event.

## JURISDICTION

4. On January 24, 2015 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Court"), commencing the above-captioned chapter 11 case. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(c) and 1108 of the Bankruptcy Code.

5. No creditors' committee has been appointed in these cases.

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. The bases for the relief requested herein are sections 361, 362(d)(3), 363 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

8. SupplementWarehouse.com Inc. ("SWI" or the "Debtor") is a Wisconsin corporation with its principal office, main warehouse, and flagship retail store located at 2440 Corporate Preserve Drive, Suite 100, Oak Creek, WI 53154. Debtor's business centers around the online sale of a wide variety of sports-related energy and nutritional supplements through its

website at SupplementWarehouse.com. In addition to its website and flagship retail store, the Debtor operates a second retail outlet 7110 West Greenfield Avenue, Milwaukee, WI 53214.

9. The Debtor is obligated to Fifth Third Bank ("Fifth Third" or "Lender") under a Revolving Note dated December 7, 2011 in the original principal amount of $700,000 which is secured by security interest in all of the Debtor's business assets by virtue of a Commercial Security Agreement executed in favor of Lender on or about December 9, 2011. As of the Petition Date, the outstanding balance owed by the Debtor to Lender under the Revolving Note and a cross-collateralized Credit Card Agreement was approximately $1.2 million, including default interest and penalties.

10. The Debtor's operational and profitability problems are principally due to inventory management issues, inventory leakage issues, gross margin issues and expense control issues. As a result thereof, the Debtor is in default of its obligations to Lender.

11. Despite having entered into a series of loan modifications and forbearance agreements, the Debtor and Lender have thus far been unable to reach an agreement to restructure the debt. On or about January 21, 2015, following months of negotiations, Lender rejected the Debtor's proposed settlement and restructuring plan and instead opted to move forward toward a liquidation of the Debtor through its motion for the appointment of a receiver in Case No. 2014 CV 009990 pending before the Circuit Court Branch 42 of Milwaukee County, Wisconsin. As a result, the Debtor was forced to file its chapter 11 petition so that it could pursue its reorganization under the provisions of the Bankruptcy Code.

12. Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, certain cash and cash equivalents held by the Debtor as of the commencement of its bankruptcy case and the proceeds, products, offspring, or profits of the Prepetition Collateral received by the Debtor after

the commencement of the case constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and in which Lender has an interest within the meaning of sections 363(c)(2) and 363(e) (the "<u>Cash Collateral</u>").

## **RELIEF REQUESTED**

13. By this Motion, the Debtor seeks, among other things:

(a) authorization pursuant to the Interim Cash Collateral Order under Bankruptcy Code sections 361, 362(d)(3)(B), 363(c), and 363(e) of the Bankruptcy Code to use the Cash Collateral and provide adequate protection to Lender with respect to the Debtor's use of such Cash Collateral and other diminution in value of the Prepetition Collateral; and

(b) the scheduling of the Final Hearing on this Motion and the establishment of notice procedures in respect of the Final Hearing to consider entry of the Final Order approving the use of Cash Collateral and the granting of adequate protection to Lender on a final basis.

## **BASIS FOR RELIEF**

**A.** **<u>Use of Cash Collateral</u>**

14. The Debtor has determined that the use of the Cash Collateral is necessary for the Debtor to maintain sufficient liquidity so that it may continue to operate its company in chapter 11 in the ordinary course of business and be positioned to prepare, file and confirm a plan of reorganization. Without immediate access to the Cash Collateral, the Debtor will not be able to pay the ongoing costs of running its business and administering its estate, the result of which will be the irreparable damage to the value of the Debtor and thus the value of the Lender's Prepetition Collateral. Indeed, the Debtor has determined that if it is not allowed to use Cash Collateral, it will not be able to maintain its business during this chapter 11 case, proceed to confirmation of a plan of reorganization.

15. Access to the Cash Collateral will provide the Debtor's vendors and other creditors with the requisite security that the Debtor will be able to continue conducting its

business in the ordinary course without interruption. The use of Cash Collateral is necessary to run the Debtor's business properly and generate additional Cash Collateral during the pendency of the chapter 11 case.

16. Moreover, access to the Cash Collateral will enable the Debtor to further maximize the value of its assets for the Lender, its estate and its creditors.

17. Section 363(c)(2) of the Bankruptcy Code provides that a debtor "may not use, sell, or lease cash collateral ... unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Additionally, section 363(e) provides that, on request of an entity that has an interest in cash collateral to be used, the court may condition such use as is necessary to provide adequate protection of such interest. The Debtor requests that the Court approve its use of Cash Collateral to pay insurance premiums, utility invoices, salaries, operating expenses and attorneys' fees and other professional fees incurred during the pendency of these cases, all as reflected in the Operating Budget.

18. Bankruptcy Rule 4001(b) provides that if, as here, a debtor seeks to use cash collateral during the 15-day period following the filing of a motion requesting authorization to use such cash collateral, the court may authorize the use of "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending final hearing." Bankruptcy Rule 4001(b)(2). After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business.

19. The Debtor's request for interim use of Cash Collateral pursuant to the Interim Cash Collateral Order is necessary to avoid immediate and irreparable harm to the Debtor. To ensure a smooth transition into Chapter 11 and the maximization of the value of the Debtor's

assets, it is imperative that the Debtor be authorized to use Cash Collateral pursuant to section 363 of the Bankruptcy Code to avoid immediate and irreparable harm to the Debtor's estate. Absent the use of Cash Collateral for their continuing business operations, the Debtor will be unable to fund its operating expenses in the ordinary course, thus needlessly jeopardizing their reorganization efforts. Consequently, if interim relief is not obtained, the Debtor's attempts to reorganize may well be doomed at the outset, to the detriment of the Debtor and its creditors.

20. Moreover, without immediate access to the use of cash collateral, the Debtor expects to suffer an acute cash shortage in the coming days that threatens its ability to maintain operations in the short term, even through the date of the Final Hearing. Accordingly, the Debtor requests that the Court grant the relief requested herein on an interim basis, subject to final approval at the Final Hearing.

B. **Adequate Protection**

21. Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtor may not use the Cash Collateral without the consent of the Lender or authorization by the Court. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e). The Debtor intends to request Lender to consent to use of Cash Collateral pursuant to the Operating Budgets, and hopes that agreement with Lender will be reached.

22. Pursuant to *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988), the interest in property entitled to adequate protection under section 363(e) is equal to the value of the collateral that is subject to the secured creditor's lien. Accordingly, a debtor can provide adequate protection to an undersecured creditor by

{33968: 004: 01538364.DOC :2 }  7
Case 15-20569-svk    Doc 7    Filed 01/27/15    Page 7 of 15

maintaining the value of the collateral. *See, e.g., In re Addison Properties. Ltd. P'shi p*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995) ("it is now established that 'adequate protection' is meant only to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property, rather than to compensate the creditor for the bankruptcy-imposed delay in enforcing its rights in that property.").

23. In this Circuit, two opinions from Judge Wedoff lead the way in analyzing the issue of adequate protection. *See Addison Properties,* 185 B.R. 766 and *In re Markos Gurnee P'ship*, 252 B.R. 712 (Bankr. N.D. Ill. 1997). In *Addison Properties*, the court decided, after thorough review of all arguments on this issue, that the value of a lender's collateral must be valued as of the petition date for purposes of adequate protection.[2] *Id.* at 783-84. *Markos* came to the same conclusion. *See Markos Gurnee P'ship*, 252 B.R. at 717 (stating that "the value of the secured lender's interest in estate property, for purposes of adequate protection, is measured as of the filing of the bankruptcy case"). *Addison Properties* and *Markos* represent the majority view nationally that it is only the value of the lender's collateral in existence as of the petition date that must be adequately protected.

24. These opinions from Judge Wedoff represent the majority opinion among courts nationwide. *See In re Nice,* 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral"); *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003) (finding that the acquisition by the estate of additional collateral

---

[2] However, the *Addison Properties* court noted that, for purposes of confirmation, a lender's collateral should be valued as of the confirmation hearing. The court called this the "dual valuation approach" – which differs from a stricter "single valuation approach" that fixes the value of a lender's collateral at the petition date even for purposes of confirmation. Nonetheless, even the single valuation approach values a lender's collateral as of the petition date for purposes of adequate protection. Only the minority continuous valuation approach finds otherwise.

{33968: 004: 01538364.DOC :2 }  8

postpetition does not increase the value of a lender's claim subject to adequate protection); *Homestead Partners, Ltd. v. Condor One, Inc. (In re Homestead Partners, Ltd.)*, 200 B.R. 274, 281 n.6 (Bankr. N.D. Ga. 1996) (same); *In re Duval Manor Assocs.*, 191 B.R. 622, 633 (Bankr. E.D. Pa. 1996) (same); *In re Johnson*, 165 B.R. 524 (S.D. Fla. 1994) (same); *Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[t]he goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest"); *In re Spacek*, 112 B.R. 162, 165 (W.D. Tex. 1990) (discussing the value of collateral for adequate protection purposes relative to the value as of the petition date); *In re Ritz-Carlton of D.C., Inc.*, 98 B.R. 170, 173 (S.D.N.Y. 1989) ("[t]he general rule is that for adequate protection purposes a secured creditor's position *as of the petition date* is entitled to adequate protection against deterioration") (emphasis in original); *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D. N.J. 1986) ("[a]dequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy").

25. The Debtor believes that Lender's lien interests are oversecured. Accordingly, as adequate protection for Lender's interest in the Cash Collateral, the Debtor proposes to use the Cash Collateral to pay all overhead and operating expenses of its business (including the fees of Debtor's attorneys and professionals), as more specifically described in the Operating Budget attached as **Exhibit A** hereto and to the proposed Interim Cash Collateral Order.[3] By so doing, the Debtor will be able to maintain the value of the Debtor's business — *i.e.*, Lender's collateral — as a going concern and prevent it from diminishing in value. The Debtor submits that expending the Cash Collateral on the necessary expenses of the Debtor's business can only

---

[3] All expenses of the Debtor during the pendency of this chapter 11 case, including those of the Debtor's and Committee's professionals, will paid by the Debtor from Lender's Cash Collateral in the ordinary course of its business pursuant to the Operating Budget.

preserve the value of the business and, thus, Lender's secured interest. Indeed, all expenditures from the Cash Collateral set forth in the Operating Budget are necessary to maintain and preserve the value of the Debtor's business, which is Lender's fundamental collateral.

26. Lender shall be granted replacement liens in all property acquired or generated postpetition by the Debtor's continued operations; provided, however, that any such replacement liens shall apply only to any category of post-petition collateral in which that secured creditor held a valid, perfected security interest as of the Petition Date. In addition, any replacement liens shall attach in favor of a secured creditor in the order of priority of its secured claim relative to other secured claims, shall attach only to the extent and in the amount that it held a valid, perfected "secured claim" in property of the Debtor pursuant to section 506(a) of the Bankruptcy Code in that category of collateral as of the Petition Date and shall pertain only to categories of property owned by the Debtor with respect to whom that creditor held a secured claim on the Petition Date. Further, the replacement liens to be granted to Lender shall not attach to the avoidance powers of the Debtor under sections 544 to 550 of the Bankruptcy Code.

27. As additional adequate protection, the Debtor will make interest payments to Lender at the non-default contract rate of interest under the Revolving Note, *i.e.* the Prime Rate plus 1.0%, as set forth on the Operating Budget attached hereto as **Exhibit A**. In addition, the Debtor will provide Lender with a budget-to-actual report within ten (10) business days of the end of each preceding monthly budget period.

28. Under the Interim Cash Collateral Order and Final Order, the following shall constitute "Termination Events":

(a) entry of an order converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code;

(b) entry of an order dismissing or suspending the chapter 11 case;

(c) entry of an order appointing a trustee under section 1104 of the Bankruptcy Code;

(d) entry of an order appointing an examiner under section 1104(b) with powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code;

(e) the payment by the Debtor, without the Lender's written consent in each instance, of aggregate disbursements on a cumulative basis for the period from Monday of the calendar week after which this case was filed through the end of each calendar week thereafter, taking each such period as one accounting period, in excess of, respectively, 120% of such disbursements projected to be made in the Operating Budget for each such respective period thereafter; or

(f) the Debtor materially breaches or otherwise fails to abide by any of the terms or provisions of the Interim Cash Collateral Order or Final Order.

29. Upon written notice (which may be in the form of email) from Lender to Debtor and its counsel of the occurrence of any alleged Termination Event, the Debtor may apply to the Court to cure, modify, adjust or justify the adequate protection provided hereunder to Lender. The Debtor and Lender shall first endeavor in good faith to resolve any Termination Event or adequate protection dispute; however, if not resolved consensually, any such dispute shall be resolved by the Court at a hearing held within the first seven (7) business days following the Debtor's receipt of the notice of the alleged Termination Event as set forth herein.

30. The Debtor requests that the Court find that the foregoing adequate protection to be granted to the Lender is reasonable and sufficient to protect its interests.

C. **Interim Approval**

31. Bankruptcy Rule 4001(b) governs the procedures for the use of cash collateral,

and provides, in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 15 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bank. P. 4001(b)(2).

32. Accordingly, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the interim use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. The Debtor seeks entry of the Interim Cash Collateral Order to avoid immediate and irreparable harm to its estate, its assets and its creditors. This relief will enable the Debtor to operate its business in the ordinary course and to pay necessary expenses and avoid immediate and irreparable harm to its estate pending a final hearing on the Motion. Pursuant to Bankruptcy Rule 4001, the Court is authorized to grant the relief requested by this Motion.

### D. Final Hearing and Notice

33. The Debtor requests that the Court schedule the Final Hearing no earlier than 21 (twenty-one) days following the date the Court enters the Interim Cash Collateral Order. Within three (3) business days following the Court's entry of the Interim Cash Collateral Order and scheduling of the Final Hearing Date, the Debtor will file a Notice of Hearing with respect to the Final Hearing with the Court and serve via by First-Class U.S. mail upon (a) the United States Trustee; (b) Lender and its counsel; (c) the Debtor's twenty (20) largest unsecured creditors; (d) any party who filed a request for notices in this chapter 11 case pursuant to Bankruptcy Rule 2002 as of the date of this Interim Cash Collateral Order; and (e) the Department of Revenue for

{33968: 004: 01538364.DOC :2 }    12
Case 15-20569-svk    Doc 7    Filed 01/27/15    Page 12 of 15

the State of Wisconsin (the "Notice Parties").

34. To the extent the Operating Budget is modified in advance of the Final Hearing, the Debtor will serve a copy of any revised Operating Budget upon the Notice Parties not later than three (3) business days in advance of the Final Hearing.

**COMPLIANCE WITH BANKRUPTCY RULE 4001 AND LOCAL RULE 4001**

35. Local Rule 4001 requires the Debtor to (1) recite whether the proposed form of order and/or underlying cash collateral stipulation contains certain provisions; (2) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement; and (3) provide the justification for the inclusion of such provision. A chart addressing the requirements of Local Rule 4001 is included below:

| **Requisite Provision** | **Location in Cash Collateral Order** | **Justification** |
|---|---|---|
| Local Rule 4001(b)(1) – Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the pre-petition secured creditors (i.e., clauses that secure pre-petition assets in which the secured creditor would not otherwise have a security interest by virtue of its pre-petition security interest or applicable law). | None | N/A |
| Local Rule 4001(b)(2) -- Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or debt or the waiver of claims against the secured creditor without first giving parties-in-interest at least 75 days from the entry of the order and the creditors' committee, if formed, at least 60 days from the date of its formation to investigate such matters | None | N/A |

| Requisite Provision | Location in Cash Collateral Order | Justification |
|---|---|---|
| Local Rule 4001(b)(3) -- Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c) | None | N/A |
| Local Rule 4001(b)(4) – Provisions that grant immediately to the pre-petition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549 | None | N/A |
| Local Rule 4001(b)(5) – Provisions that deem pre-petition secured debts to be post-petition debt or that use post-petition loans from a pre-petition secured creditor to pay all or part of that secured creditor's pre-petition debt, other than as provided in 11 U.S.C. § 552(b) | None | N/A |
| Local Rule 4001(b)(6) – Provisions that provide for a substantially smaller or no professional fee carve-out for the professionals retained by a creditors' committee as compared to a professional fee carve-out for the professionals retained by the debtor | None | N/A |
| Local Rule 4001(b)(7) – Provisions that prime any secured lien, without the consent of that lienor | None | N/A |
| Local Rule 4001(b)(8) – Super-priority positions unless a significant carve-out is proposed | None | N/A |
| Local Rule 4001(b)(9) – A secured creditor obtaining a higher administrative expense priority than Chapter 11 expenses of administration of Chapter 7 expenses of administration in the event of a conversion from Chapter 11 | None | N/A |
| Local Rule 4001(b)(10) – Automatic perfection of security interest in "replacement collateral" without filing or re-filing UCC statements | Paragraph 4(b) | Adequate protection for revolving inventory and receivable collateral |

36. Local Rule 4001 also requires that "Financing Motions" provide a summary of the

essential terms of the proposed use of cash collateral and/or financing. Likewise, Bankruptcy Rules 4001(b) and 4001(c) require summaries of the relevant documents of all materials and identification of the location of material provisions. The Debtor asserts that it has complied with both Bankruptcy Rule 4001 and Local Rule 4001 by providing the summary above.

## NO PRIOR REQUEST

37. No prior motion for the relief requested herein has been made to this Court in these Chapter 11 cases.

## NOTICE

38. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) Lender and its counsel; (c) the Debtor's twenty (20) largest unsecured creditors as filed in the Debtor's case and (d) all registrants in the Court's CM/ECF system. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter the Interim Cash Collateral Order; (ii) schedule the Final Hearing and approve the form of notice thereof; and (iii) grant such other relief as the Court may deem just and appropriate.

Dated: January 27, 2015                                     Respectfully submitted,

**SupplementWarehouse.com Inc.**

By: /s/  *Forrest B. Lammiman*_____
       One of Its Proposed Attorneys

Forrest B. Lammiman
David L. Kane
Meltzer, Purtill & Stelle LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)
flammiman@mpslaw.com
dkane@mpslaw.com