UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

SupplementWarehouse.com Inc.,　　　　　　　　　Chapter 11

　　　　　　　　　　　Debtor.　　　　　　　　　　Case No. 15-20569

**MOTION TO (I) AUTHORIZE THE DEBTOR TO PAY PREPETITION WAGES, SALARIES AND BENEFITS, (II) AUTHORIZE THE DEBTOR TO CONTINUE EMPLOYEE BENEFIT PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND (III) DIRECT ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION WAGE, SALARY, AND BENEFIT OBLIGATIONS**

　　　　Debtor SupplementWarehouse.com Inc. ("SWI", or the "Debtor"), debtor and debtor-in-possession in the above-captioned case, hereby moves (the "Motion") this Court for an order pursuant to sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code (as defined below) that (a) authorizes but does not direct the Debtor to pay prepetition wages, salaries, and benefits; (b) authorizes but does not direct the Debtor to continue employee benefit programs in the ordinary course of business; and (c) authorizes and directs all banks to honor payments for prepetition wage, salary, and benefit obligations. In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION

　　　　1.　　On January 24, 2015 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Court"), commencing the above-captioned chapter 11 case.

Forrest B. Lammiman flammiman@mpslaw.com
David L. Kane dkane@mpslaw.com
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, IL 60606
Telephone: (312) 987-9900
Facsimile: (312) 987-9854

{33968: 004: 01540023.DOC : }

2. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(c) and 1108 of the Bankruptcy Code.

3. No creditors' committee has been appointed in this case.

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. The bases for the relief requested herein are sections 105(a), 363(b)(1), 507(a)(3), 507(a)(4), 1107(a) and 1108 of the Bankruptcy Code.

## **BACKGROUND**

6. The Debtor is a Wisconsin corporation with its principal office, main warehouse, and flagship retail store located at 2440 Corporate Preserve Drive, Suite 100, Oak Creek, WI 53154. Debtor's business centers around the online sale of a wide variety of sports-related energy and nutritional supplements through its website at SupplementWarehouse.com. In addition to its website and flagship retail store, the Debtor operates a second retail outlet 7110 West Greenfield Avenue, Milwaukee, WI 53214.

7. The Debtor is obligated to Fifth Third Bank ("Fifth Third" or "Lender") under a Revolving Note dated December 7, 2011 in the original principal amount of $700,000 which is secured by security interest in all of the Debtor's business assets by virtue of a Commercial Security Agreement executed in favor of Lender on or about December 9, 2011. As of the Petition Date, the outstanding balance owed by the Debtor to Lender under the revolving Note and a cross-collateralized Credit Card Agreement was approximately $1.2 million, including default interest and penalties.

8. The Debtor's operational and profitability problems are principally due to inventory management issues, inventory leakage issues, gross margin issues and expense control issues. As a result thereof, the Debtor is in default of its obligations to Lender.

9. Despite having entered into a series of loan modifications and forbearance agreements, the Debtor and Lender have thus far been unable to reach an agreement to restructure the debt. On or about January 21, 2015, following months of negotiations, Lender rejected the Debtor's proposed settlement and restructuring plan and instead opted to move forward toward a liquidation of the Debtor through its motion for the appointment of a receiver in Case No. 2014 CV 009990 pending before the Circuit Court Branch 42 of Milwaukee County, Wisconsin. As a result, the Debtor was forced to file its chapter 11 petition so that it could pursue its reorganization under the provisions of the Bankruptcy Code.

**RELIEF REQUESTED**

10. By this Motion, the Debtor requests that this Court enter an order, pursuant to sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code, authorizing, but not directing, the Debtor to pay or otherwise honor prepetition wages, salaries, benefits, payroll taxes and deductions, and prepetition obligations arising under various employee benefit programs (collectively, the "Prepetition Wages and Benefits") owing to, or for the benefit of, the Debtor's current full-time, part-time and contract employees (collectively, the "Employees"). A detailed listing of the Prepetition Wages and Benefits is attached hereto as **Exhibit A**.

11. The Debtor further requests the entry of an order (a) directing all banks to honor the Debtor's prepetition checks for payment of the Prepetition Wages and Benefits and (b) prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers to

{33968: 004: 01540023.DOC : }

3

Case 15-20569-svk    Doc 8    Filed 01/27/15    Page 3 of 12

Employee's accounts for Prepetition Wages and Benefits. Finally, the Debtor requests the entry of an order providing that the Debtor's banks shall not be liable to the Debtor for any payments which they reasonably and in good faith believe are permitted to be made pursuant to this Motion and which they reasonably and in good faith believe have been authorized by the Debtor, but which are, in fact, erroneously made without the Debtor's authorization.

**A.      Wages and Employee Benefit Programs**

12.     As of the Petition Date the Debtor employs sixty-two (62) active Employees who provide a variety of services to the Debtor. Fifty-two (52) of the Employees are full-time and ten (10) of the Employees hold part-time positions. Fifteen (15) of the Employees hold salaried positions, with the remaining Employees working on an hourly basis.

13.     The Debtor pays its payroll on a weekly basis. The Debtor's weekly payroll is funded one week in arrears. The Debtor currently uses the payroll service of Paychex to handle the majority of its payroll obligations, with the majority of employees using direct deposit services.[1] As set forth in more detail on **Exhibit A**, the Debtor's current prepetition estimated aggregate weekly Prepetition Wages and Benefits obligations are estimated to be $33,373.35.

14.     The Debtor additionally offers a number of additional "benefits" to its employees in addition to their base pay, including, without limitation, vacation pay, overtime, life insurance, medical, dental, vision, long and short term disability, 401K and a health savings account (HSA) program. These benefits are usual, customary and necessary if the Debtor is to retain these qualified employees to operate its business.

**B.      Social Security, Income Taxes, and Other Withholdings**

15.     The Debtor withholds from Employee paychecks amounts that the Debtor is

---

[1] The Debtor pays Paychex a processing fee of approximately $555.00 per pay period.

{33968: 004: 01540023.DOC : }

required to transmit to third parties. Such amounts are automatically deducted by the Debtor's payroll company, Paychex, when each payroll in processed. Examples of such withholdings may include Social Security, FICA, federal, state and local income taxes, wage assignments, child support obligations, garnishments, health care payments, and garnishments. Detailed accountings of all withholdings are set forth on **Exhibit A** attached hereto. The Debtor believes that such withheld funds, to the extent that they remain in the Debtor's possession, constitute monies held in trust and therefore are not property of the Debtor's bankruptcy estate. Accordingly, the Debtor believes that its practice of directing such funds to the appropriate parties is in the ordinary course of business, and seeks authority for its payroll service, Paychex, to continue such practice.

**C.     Direction to Banks**

16.     Finally, the Debtor requests that the order approving this Motion authorize and direct all banks to receive, process, honor and pay any and all checks drawn on the Debtor's payroll and/or general disbursement accounts related to the Prepetition Wages and Benefits, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

**BASIS FOR RELIEF**

17.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims for prepetition wages, salaries, commissions, vacation, sick leave, and employee benefit contributions be accorded priority in payment in an amount not to exceed $12,475 for any employee.

18.     Importantly, all of the Debtor's Employees are individually owed amounts that are under the $12,475 priority cap set forth for any single employee in sections 507(a)(4) and

507(a)(5) of the Bankruptcy Code. No payment is requested herein that would exceed such priority wage cap. As such, payment of the Prepetition Wages and Benefits in the ordinary course of business should neither prejudice general unsecured creditors nor materially affect the Debtors' estate, because section 507(a)(4) and section 507(a)(5) priority claims are already entitled to payment in full under a reorganization plan. *See* 11 U.S.C. § 1129(a)(9)(B).

19. In order to retain its Employees and maintain Employee morale, the Debtor must have authority to pay or otherwise satisfy all Prepetition Wages and Benefits as summarized on **Exhibit A**, subject to the $12,475 statutory cap for any single employee. The amounts to be paid to Employees pursuant to this Motion are reasonable compared with the importance and necessity of the Employees and the losses the Debtor will likely suffer if these amounts are not paid.

20. The relief requested in this Motion is necessary - indeed crucial - and should be authorized under sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code. The Employees are vital to the continued operation of the Debtor's business and to its successful reorganization or sale of assets. Accordingly, the Debtor submits that the relief sought herein is consistent with and authorized by sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code. Based upon the foregoing, the Court should enter an order authorizing the Debtor to pay and banks to honor, in the ordinary course of business, the Prepetition Wages and Benefits.

## **APPLICABLE AUTHORITY**

21. Section 105(a) of the Bankruptcy Code provides as follows:

> The court may issue any order process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua

> sponte, taking any action or making any determination necessary or appropriate to enforce or implement court or order or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). This section allows bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code, either under specific statutory or equitable common law principles. However, "the power conferred by § 105(a) is one to implement rather than override [other provisions of the Bankruptcy Code]." *In re Kmart*, 359 F.3d 866, 871 (7th Cir. 2004). The purpose of section 105(a) is to "assure the Bankruptcy Courts' power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." *Collier on Bankruptcy* ¶105.01 (15th rev. ed. 2004). Thus, section 105(a) essentially codifies the bankruptcy court's inherent equitable powers. *See Management Tech. Corp. v. Pardo*, 56 B.R. 337, 339 (Bankr. D.N.J. 1985) (court's equitable power derived from section 105 of the Bankruptcy Code).

22. Numerous courts have applied section 105(a) to authorize payment of prepetition obligations where, as here, such payment is an essential element of the preservation of the debtor-in-possession's potential for rehabilitation. *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105] the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor."); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("courts have used their equitable power under section 105(a) ... to authorize the payment of prepetition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization"); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (reasoning that because the debtor-in-possession has fiduciary duties it must meet, it is logical that the bankruptcy court may "authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate" under section 105(a)); *In re*

*Synteen Techs., Inc.*, No. 0002203-W, 2000 WL 33709667, at *2 (Bankr. D.S.C. Apr. 14, 2000) (courts have permission to allow payment of a prepetition claim 'when essential to the continued operation of the debtor.') (citation omitted).

23. As stated in *Kmart*, 359 F.3d 866 (2004), section 105(a) can only be used to implement other sections of the Code. In the case of this Motion to pay employees' Prepetition Wages and Benefits, section 105(a) implements sections 363(b)(1), 1107(a), 1108, and 507(a)(4). In *Kmart*, which involved the payment of prepetition claims of certain "critical" trade vendors, the Seventh Circuit suggested that if authority to pay critical vendors could be found in section 363(b)(1), the debtor would have had to show that: (1) the critical vendor would have ceased doing business with the debtor absent the payment of the creditor's prepetition claim; (2) there was no alternative to the payment of the prepetition claim; and (3) disfavored creditors were at least as well off as they would have been had the critical-vendors order not been entered. *Id*. at 873-74. These same three factors were considered by the court in *In re CEI Roofing, Inc.,* 315 B.R. 50 (Bankr. N.D. Tex. 2004) in granting the debtor's motion to pay unpaid employee wages earned prior to the petition date and continue employee benefits.

24. In the present case, the three factors identified by the Seventh Circuit in *Kmart* and considered in *CEI Roofing* compel granting the Motion. First, without receiving payment of their Prepetition Wages and Benefits, it is likely that many Employees would leave their jobs in order to seek new employment. Without the services of the Debtor's Employees, the Debtor would suffer irreparable economic harm by being unable to continue its operations. *See CEI Roofing*, 315 B.R. at 61 ("[t]here has evolved a rule for the payment of prepetition wages and benefits which is based on both common sense and the express provisions of the Bankruptcy Code. If employees are not paid, they will leave. If they leave the Debtor's business, the

bankruptcy case fails shortly after the filing."). For these reasons, the payment of the Prepetition Wages and Benefits is essential in order to preserve the value of the Debtor's business as going concerns.

25. Second, section 1107 of the Bankruptcy Code states that "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." Among the duties of a trustee under section 704(a), thus incorporated into a debtor-in-possession's duties under section 1107, is the duty "to maximize the value of the estate." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 351 (1985). In this case, payment of the Prepetition Wages and Benefits is necessary in order to continue operation of the Debtor's business as a going concern and maximize the value of the Debtor's estate. If the Motion were denied, the Debtor's Employees may decide to leave their jobs, which would jeopardize the Debtor's prospects of reorganizing or selling their assets as a going concern.

26. Moreover, the Prepetition Wages and Benefits constitute priority claims under section 507(a)(4) of the Bankruptcy Code. As priority claims, they are distinguishable under the *Kmart* decision. In *Kmart*, the Seventh Circuit disapproved of preferential payments to specific classes of unsecured creditors. 359 F.3d at 874. In contrast, in this case, the Debtor seeks to pay the pre-petition claims of all of the Employees and to treat the entire Employee class uniformly. Consequently, the limitations of *Kmart* are not applicable in these circumstances. Finally, the relief sought in this Motion does not trigger any concerns regarding contradicting the priorities established in the Bankruptcy Code. By enacting section 507(a)(4), Congress elevated employee wage claims above other general unsecured creditors, thus eliminating any concern over unfair discrimination over other unsecured creditors.

27. Notably, similar relief has been granted numerous times by courts in various chapter 11 cases in this Circuit. *See, e.g., In re Michael's Market, Inc.*, Case No. 11-52013 (CAD) (Bankr. N.D. Ill. Jan. 5, 2012); *In re Jernberg Industries, Inc.*, Case No. 05-B-25909 (JHS) (Bankr. N.D. Ill. Jun. 30, 2005); *In re American Mattress of Illinois, Inc.,* Case No. 04-B-42649 (ABG) (Bankr. N.D. Ill. Dec. 8, 2004); *In re Universal Access Global Holdings, Inc.*, Case No. 04-B-28747 (JBS) (Bankr. N.D. Ill. Aug. 13, 2004); *In re Industrial Paint & Supply, Inc.*, Case No. 04-B-12747 (BWB) (Bankr. N.D. Ill. Apr. 1, 2004).

28. As part of the foregoing relief, the Debtor also seeks authority to pay (via its payroll servicer) to the appropriate entities any and all payroll withholding amounts, including, but not limited to, Social Security, FICA, federal, state and local income taxes, garnishments, alimony, child support payments, health care payments, and retirement fund withholding. The failure to make such trust fund tax payments may subject the Debtor to federal or state liability. *See City of Farrell v. Sharon Steel Corp.* (*In re Sharon Steel Corp.*), 41 F.3d 92, 94-96 (3rd Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes); *DuCharmes & Co. v. Michigan* (*In re DuCharmes*), 852 F.2d 194, 195 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Because such funds are not property of the Debtor's estate, the funds are not subject to the normal bankruptcy prohibitions against payment. *See Begier v. IRS*, 496 U.S. 53, 67 (1990) (debtor's payment of employee withholding for federal income and FICA taxes not a preferential transfer because withholding held in trust for taxing authority and not a part of debtor's estate); *Old Republic Nat'l Title Ins. Co. v. Tyler* (*In re Dameron*), 155 F.3d 718, 721 (4th Cir. 1998). The Debtor therefore requests that the Court confirm that such trust fund withholding is not property of the Debtor's estates and that the Debtor's payroll service may

transmit such withheld amounts to the proper parties in the ordinary course of business.

29. Finally, the Debtor requests that the Court enter an order directing all banks to honor all prepetition and postpetition checks for payment of Prepetition Wages and Benefits and prohibiting all banks from placing any holds on, or attempting to reverse, any automatic transfers to Employees' accounts for Prepetition Wages and Benefits.

30. Nothing in this Motion should be construed as a request for authority to: (a) assume any executory contract under section 365(a) of the Bankruptcy Code, or (b) change the classification of any claim or alter the rights of any Employee or other person. In particular, nothing in this motion should be construed as a request to grant any person administrative expense priority pursuant to sections 507 and 503 of the Bankruptcy Code.

31. For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interest of all parties-in-interest.

## NO PRIOR REQUEST

32. No prior motion for the relief requested herein has been made to this Court in these bankruptcy cases.

## NOTICE

33. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) Lender and its counsel; (c) each of the Banks set forth on **Exhibit A** hereto; and (d) the Debtor's twenty (20) largest unsecured creditors as filed in the Debtor's case. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) authorizing, but not directing, the Debtor to pay all Prepetition Wages and Benefits in the amount of $33,373.35, (ii) authorizing, but not directing, the Debtor to continue its employee benefit programs in the ordinary course of business, (iii) directing all banks to honor prepetition and postpetition checks for payment of Prepetition Wages and Benefits, and (iv) granting such other and further relief as is just and proper.

Dated: January 27, 2015

Respectfully submitted,

**SupplementWarehouse.com Inc.**

By: /s/ *Forrest B. Lammiman*
      One of Its Proposed Attorneys

Forrest B. Lammiman
David L. Kane
Meltzer, Purtill & Stelle LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)
flammiman@mpslaw.com
dkane@mpslaw.com